**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**MAHMOUND MUSTAPH SAFA,**

        **Petitioner,**

**v.**                                                          **Civil Action No. 5:07cv154**
                                                                          **(Judge Stamp)**

**WAYNE A. PHILLIPS, Warden,**

        **Respondent.**

**OPINION/REPORT AND RECOMMENDATION**

**I.    Factual and Procedural History**

The petitioner initiated this § 2241 habeas corpus action *pro se* on November 26, 2007. In the petition, the petitioner challenges the Bureau of Prisons ("BOP") decision to place him in a halfway house for only the last 10% of his sentence. On December 5, 2007, the undersigned conducted a preliminary review of the file and determined that summary dismissal was not appropriate at that time. Thus, the respondent was directed to show cause why the petition should not be granted.

On December 7, 2007, Stephen Herndon filed a Notice of Appearance on behalf of the petitioner.

On January 4, 2008, the respondent filed a Motion to Dismiss the petition as moot. The petitioner filed a reply on January 14, 2008. A hearing was held on the respondent's motion on February 19, 2008. This case is now before the undersigned for a report and recommendation on the respondent's Motion to Dismiss as Moot.

**II.    Contentions of the Parties**

On January 17, 2006, the petitioner was sentenced in the United States District Court for the Eastern District of Michigan to 15 months imprisonment for making false declarations before the grand jury. Petition (dckt. 1) at 2. The petitioner was subsequently designated to serve his sentence at FCI Morgantown. On July 24, 2007, the petitioner's unit team conducted a review of his case and recommended the petitioner's placement in a Residential Release Center ("RRC" previously "CCC" or "Halfway House") for July 3, 2008. Brief in Support (dckt. 2) at Ex. A. After a similar review on October 17, 2007, the same recommendation was made. Id. at Ex. B. At that time, the petitioner's unit team explained that because of his work history, residence, and strong community ties, the petitioner would not receive more than his 10% date, or 37 days. Petition at 5.

In the petition, the petitioner asserts that the BOP's policy of transferring prisoners to a CCC for the last 10% of their term of imprisonment has been ruled invalid. Moreover, the petitioner asserts that he and other inmates were told by an employee of FCI-Morgantown that Morgantown does not give six months to anyone who is serving a sentence under 60 months. However, the petitioner asserts that the BOP's 10% policy has been ruled invalid by several courts, and that he is being unlawfully denied transfer to a CCC for the last six months of his sentence. Therefore, he seeks consideration of his CCC placement date without reliance on the challenged regulations. Additionally, the petitioner seeks placement in a CCC for a full six months, or alternatively, six months placement on home confinement.

The Government contends that the petition should be dismissed as moot because subsequent to the filing of this case, the petitioner's case manager was informed that the BOP's 10% policy had been ruled invalid in this District. Consequently, the petitioner's case manager was directed to conduct a new review of the petitioner's CCC placement using the five factors enumerated in 18 U.S.C. § 3621(b) and without regard to the invalidated 10% rule. A § 3621(b) review was

2

conducted in December 2007 and the petitioner was recommended for CCC placement for the last 30-45 days of his term of imprisonment. Therefore, the Government argues that the petitioner has received the relief sought in the petition and that there is no live case or controversy remaining.

In his reply, the petitioner asserts that he has been officially recommended for release to a halfway house on July 3, 2008. The petitioner asserts that this is the same date as his original 10% referral date. The petitioner believes that this is not a coincidence. The petitioner asserts that although the BOP has now reviewed his halfway house date under the guise of § 3621, such review is a "sham" that merely "pays lip service to the factors listed under 18 U.S.C. § 3621(b) while actually being controlled by the B.O.P. 10% policy." Reply (dckt. 13) at 4.

### III. Historical Background

Prior to December 2002, the BOP had a policy of placing prisoners in a CCC for up to six months, regardless of the total length of the inmate's sentence. See BOP Program Statement 7310.04. However on December 13, 2002, the Office of Legal Counsel for the Department of Justice issued a memorandum stating that this practice was inconsistent with 28 U.S.C. § 3624(c) which, in its opinion limited an inmate's placement in a CCC to the lessor of six months or ten percent of the inmate's sentence. Section 3624(c) provides as follows:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

The BOP adopted the Office of Legal Counsel's interpretation of the statute, and numerous habeas petitions challenging the December 2002 Policy were filed. The First and Eighth Circuits,

as well as many district courts, [1] found the policy contrary to the plain meaning of 18 U.S.C. § 3621(b) which states:

> The Bureau shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering -
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence -
>
> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>
> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

In response to those decisions, the BOP created new regulations in 2005 governing the placement of inmates in CCCs. These regulations state that the BOP was engaging in a "categorical exercise of discretion" and choosing to "designate inmates to [CCC] confinement . . . during the last ten percent of the prison sentence being served not to exceed six months." 28 C.F.R. § 570.20-21. The new regulation expressly prohibits placement of prisoners in CCCs prior to the pre-release

---

[1] See Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004); Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004); Cato V. Menifee, 2003 WL 22725524 at *4 (S.D.N.Y. Nov. 20, 2003 (collecting cases).

phase of imprisonment and provides:

> When will the **Bureau designate** inmates to **community** confinement?
>
> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the **last ten percent** of the **prison sentence** being **served**, not to exceed six months.
>
> (b) We may exceed the time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program . . . or shock incarceration program) . . .

28 C.F.R. § 570.21. (Emphasis added)

It is this regulation which prompts the petitioner's habeas challenge in the instant case.

### IV. <u>Analysis</u>

Article III of the United States Constitution, limits the jurisdiction of the federal courts to cases or controversies. Therefore, a case becomes moot when there is no viable legal issue left to resolve. See <u>Powell v. McCormick</u>, 395 U.S. 486, 496 (1969). If developments occur during the course of a case which render the Court unable to grant a party the relief requested, the case must be dismissed as moot. <u>Blanciak v. Allegheny Ludlum Co.</u>, 77 F.3d 690, 698-699 (3d Cir. 1996). For the following reasons, the petitioner has already been granted the relief sought in the case -- proper consideration of his CCC placement under § 3621(b) -- and this case is moot.

In this case, the petitioner essentially argues that the BOP's 10% policy represents a categorical rule which places durational limits on CCC confinement. Petitioner asserts such rule contradicts the plain meaning of 18 U.S.C. § 3621(b) and has been found unlawful because it contravenes unambiguously expressed congressional intent. In addition, although the BOP has discretion under § 3621(b) to make placement determinations, the petitioner argues that § 3621(b) sets specific parameters which limit that discretion. Therefore, the BOP may not implement

categorical rules which do not take into account the limits of its discretion.

The Third Circuit Court of Appeals was the first court of appeals to address this issue. In Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005), the Third Circuit recognized that the various district courts to address this issue were split as to the validity of the BOP's 2005 regulations. See Woodall at 244 (collecting cases). However, after analyzing the conflicting opinions, the Third Circuit found the regulation unlawful. Id. Specifically, the Third Circuit found that the governing statute, 18 U.S.C. § 3621(b), "lists five factors that the BOP must consider in making placement and transfer determinations. The 2005 regulations, which categorically limit the amount of time an inmate may be placed in a Community Corrections Center ("CCC"), do not allow the BOP to consider these factors in full." Id. at 237. More specifically, the Court noted:

> [t]he regulations do not allow the BOP to consider the nature and circumstances of an inmate's offense, his or her history and pertinent characteristics, or most importantly, any statement by the sentencing court concerning a placement recommendation and the purposes for the sentence. And yet, according to the text and history of § 3621, these factors must be taken into account. The regulations are invalid because the BOP may not categorically remove its ability to consider the explicit factors set forth by Congress in § 3621(b) for making placement and transfer determinations.

Id. at 244; see also Wedelstedt v. Wiley, 477 F.3d 1160 (10th Cir. 2007); Levine v. Apker, 455 F.3d 71, 85-87 (2d Cir. 2006); Fults v. Sanders, 442 F.3d 1088, 1092 (8th Cir. 2006).

Relying on the clear weight of authority, this district has likewise concluded that the challenged regulations are invalid. See Smith v. Gutierrez, 2:06cv121 (N.D.W.Va. Sept. 26, 2007) (Maxwell, Sr. J.); Simcoke v. Phillips, 1:07cv77 (N.D.W.Va. Sept. 18, 2007) (Keeley, C. J.); Jaworski v. Gutierrez, 5:06cv157 (N.D.W.Va. Aug. 23, 2007) (Stamp, Sr. J.); Murdock v. Gutierrez, 3:06cv105 (N.D.W.Va. July 24, 2007) (Bailey, J.). However, in doing so, the Court has made clear that such a decision does not entitle any inmate to an Order from this Court directing

that he be immediately transferred to a CCC for the last six months of his sentence. Id. In fact, the Court has explicitly noted that the BOP's regulations are invalid only to the extent that an inmate's placement in a CCC is limited to the lessor of 10% of his sentence, or six months, without consideration of the five factors set forth in 18 U.S.C. § 3621(b).[2] Id. Thus, the invalidation of the BOP's regulations merely entitles an inmate to have his CCC placement considered in accordance with the five factors set forth in § 3621(b).[3]

Here, the testimony at the February 19th hearing established that the BOP has in fact properly considered the five factors set forth in 18 U.S.C. § 3621(b).[4] At the hearing, Fred Caromano testified that he is a case manager at FCI-Morgantown. In the fall of 2007, he was asked to conduct a CCC review for the petitioner while the petitioner's case manager was on annual leave. After determining that there were CCC's available in the petitioner's anticipated release area

---

[2] At the hearing, counsel for the petitioner conceded that if the BOP conducts a proper review under § 3621(b), then it has the discretion to determine the amount of CCC time to assign.

[3] Therefore, to the extent that the petitioner seeks an Order from the Court directing that he be granted the full six months halfway house placement, or six months on home confinement, that is simply not relief that this Court is capable of granting. See Woodall v. Federal Bureau of Prisons, 432 F.3d at 251 ( "that the BOP may assign a prisoner to a CCC does not mean that it must"); see also Crahan v. Adams, 2004 WL 4020190 *17 (S.D.W.Va. June 28, 2004) (federal prisoners have no right under § 3621(b) to placement in a halfway house for the full six months).

[4] The petitioner's reliance on Magistrate Judge Seibert's Report and Recommendation in Stamper v. Phillips, 2:07cv51 (N.D.W.Va. Feb. 1, 2008), is misplaced. In Stamper, the petitioner had not received an official CCC review under § 3621(b) at any time prior to or subsequent to the initiation of that case. Instead, Stamper's CCC placement date had been determined based solely on the Bureau's 10% rule. Moreover, although Stamper's case manager averred in an affidavit that even considering Stamper's CCC placement under the five factors of § 3621(b), she would still recommend the same CCC placement date, Magistrate Judge Seibert found that such consideration was not adequate. Instead, Magistrate Judge Seibert found that even though the case manager's affidavit listed several reasons for her conclusion, the case manager's reasons did not address each of the five factors under § 3621(b) and failed to show how each of the enumerated reasons related to the five specific factors set forth in § 3621(b). Here, the petitioner was given an official CCC review under § 3621(b) after this case was initiated. In addition, Mr. Caromano has explained, specifically, his finding with regard to each of the five factors set forth in § 3621(b). Thus, this case is clearly distinguishable from Stamper.

7

(Michigan), and that the nature and circumstances of the petitioner's offense were nonviolent and that petitioner was not likely to be a threat to the community, Mr. Caromano reviewed the petitioner's central file, included his Presentence Investigation Report (PSI) and prior program reviews, to determine if, based on the history and characteristics of the petitioner, he was eligible for CCC referral. Mr. Caromano testified that the petitioner's file revealed that the petitioner had substantial financial assets, that the petitioner had owned and operated several business prior to his incarceration, and that the petitioner had an established residence with his wife. Moreover, Mr. Caromano noted that the length of the petitioner's sentence was relatively short (15 months), and that the petitioner would not need much time to adjust. In fact, Mr. Caromano did not believe that the petitioner needed any time in a CCC,[5] but because of the BOP's stated preference to place inmates in a CCC prior to release, Mr. Caromano recommended the petitioner's placement in a CCC, or on home confinement, for 30-45 days prior to his release. Mr. Caromano further testified that 30 days is the least amount of days that can be recommended.

Next to testify was the petitioner's case manager Steve Snyder. Mr. Snyder testified that there was no reason why Mr. Caromano could not make an appropriate CCC recommendation in his absence. Mr. Snyder testified that all of the petitioner's records were in his central file, as were Mr. Snyder's notes and prior remarks from the petitioner's team meetings. When asked if he agreed with Mr. Caromano's recommendation, Mr. Snyder stated that he believed Mr. Caromano's recommendation was too generous and that the petitioner did not have a need for CCC placement.

---

[5] According to BOP Program Statement 7310.04, a CCC "provide[s] suitable residence, structured programs, job placement, and counseling (such as drug and alcohol counseling), while the inmates' activities are closely monitored." As was later noted by Mr. Snyder, the petitioner already had an established residence, he had no need for job placement programs, there was no history of drugs or alcohol which establish a need for counseling, and that the petitioner did not likely have need for any of the structured programs normally associated with a CCC.

8

However, given the Bureau's preferred placement policy, the minimum of 30 days would have been sufficient. In fact, Mr. Snyder agreed that he thought the petitioner would be a good candidate for home confinement, but that he can only make recommendations about home confinement. The decision to place an inmate on home confinement instead of in a CCC is up to the Community Corrections Manager ("CCM") and the Probation Office. In this case, the CCM determined that CCC placement, not home confinement, was appropriate.

Moreover, Mr. Snyder stated that an inmate's separation from his family and business is an unfortunate aspect of incarceration, and while he empathizes with the inmate, the inmate's personal problems in those regards cannot guide his decision. Instead, he must take into consideration the totality of the petitioner's circumstances, and in this case, he feels that the petitioner had little to no need for placement in a CCC, particularly, not for six months. Mr. Snyder stated that the petitioner simply has no need for the programs offered by the CCC and an extended stay in a CCC is not warranted.

The petitioner made much of the fact that his original placement date under the old 10% rule is the same date he received under a § 3621(b) review. However, Mr. Snyder explained that it is merely a coincidence and not that suspicious given the circumstances. Mr. Snyder explained that even under the old 10% rule, his hands were not tied. Instead, under the old rule, the 10% date would only be the initial calculation. The case manager still had to assess the needs of the inmate, which is similar to a § 3621(b) review. For example, Mr. Snyder stated that after determining an inmate's 10% date, he would then look to see if the inmate was a risk to the community and to the history and characteristics of the inmate because even under the old 10% rule, he could request additional time if there was a substantiated need. In the petitioner's case, Mr. Snyder believes that

9

only minimal time in a CCC is required , and because he cannot recommend less than 30 days, it stands to reason that the petitioner's § 3621(b) recommendation would be similar to his 10% date.[6]

Additionally, to the extent that the petitioner asserts that FCI-Morgantown did not follow the procedures set forth in the BOP's program statements which govern CCC referral decisions, that claim is simply without merit. The petitioner argued extensively that the BOP has not properly considered the factors set forth in § 3621(b). In particular, the petitioner argued that the BOP did not appropriately consider the resources of the facility contemplated. However, case managers Fred Caromano and Steve Snyder, testified at the February 19th hearing, that when making a CCC referral, it cannot be known at that time, which specific CCC an inmate will be placed. Therefore, when reviewing the resources of the facility contemplated, the case manager can only look to the release area and see if there are CCC's in that area. The petitioner seemed to imply that a review of the resources of the facility includes a review of the programs available at a specific facility. However, such a review is not necessarily required under the statute, nor is it reasonable in light of the testimony presented at the hearing.

In addition, the petitioner argues that the BOP did not appropriately consider the history and characteristics of the inmate. Specifically, the petitioner argues that although there may have been information about his personal, financial and family history within his PSI and inmate central file, the BOP was required to question him about changed circumstances prior to making its recommendation. However, the petitioner provided no testimony or information to show that his circumstances had actually changed.

---

[6] Under the 10% rule, the petitioner would have received 38 days in a CCC. Under § 3621(b), it was recommended that the petitioner receive 30-45 days.

Finally, to the extent that the petitioner argues that Caromano did not comply with the BOP's Program Statements regarding CCC placement, that claim is without merit. Notwithstanding the fact the Bureau's Program Statement is an internal procedures manual which creates no enforceable rights, Schweiker v. Hansen, 450 U.S. 785, 789 (1981) (Social Security manual is for internal use only and is without legal force); James v. United States Parole Comm'n, 159 F.3d 1200, 1206 (9th Cir. 1998) ("It is well settled that internal policy manuals of federal agencies do not generally create due process rights in others."); Lynch v. United States Parole Commission, 768 F.2d 491, 497 (2d Cir. 1985) (Commission's procedures manual is an internal procedures manual of an executive agency that does not create due process rights); Pugliese v. Nelson, 617 F.2d 916, 924 (2d Cir. 1980) (BOP Policy Statement does not create due process interest), the Program Statement was followed in this case.

Pursuant to the purpose and scope of Program Statement 7310.04(1), the BOP's operational philosophy for making CCC referrals is that "whenever possible, eligible inmates are to be released to the community through a CCC unless there is some impediment."[7] In this case, the petitioner argues that Mr. Caromano failed to follow the established purpose and scope of P.S. 7310.04 when

---

[7] At the hearing, counsel for the petitioner seemed to suggest that the purpose of the program statement was to place an inmate in a CCC for the full six months unless there was some impediment. However, that interpretation of the program statement is clearly off the mark. The program statement merely states that if an inmate is deemed eligible for CCC placement, he should, unless an impediment exists, be recommended for CCC placement. The program statement does not state what length of time should actually be recommended. In fact, counsel's interpretation of that section of the program statement is untenable when the entire program statement is read as a whole. The program statement specifically outlines the factors to be considered when determining the length of time an inmate should be placed in a CCC. In particular, the program statement emphasizes that the length of time in a CCC should be made based upon the needs and circumstances of each particular inmate. It does not say that an impediment must exist in order to recommend less than the full placement of six months. Therefore, although "no need" is not an impediment to placement, it should be considered in determining the length of placement.

11

he recommended the petitioner for only 30-45 days of CCC placement. However, the testimony shows that neither Mr. Caromano nor Mr. Snyder felt that the petitioner had a need for CCC placement,[8] yet it was still recommended that the petitioner be placed in a CCC for a portion of his sentence. That recommendation was accepted and the petitioner is scheduled to be transferred to a CCC on July 3, 2008. Thus, it is abundantly clear that Mr. Caromano adhered to the purpose and scope of P.S. 7310.04.

Pursuant to the program objectives of P.S. 7310.04(2)(b), an inmate "will have opportunities to communicate directly with staff who make significant CCC referral recommendations." In this case, the petitioner argues that staff did not allow him the opportunity to communicate directly with the staff member making his CCC referral. However, Mr. Snyder testified that he never meets with an inmate to fill out a CCC referral form. Instead, he reviews an inmate's central file and his notes from his team meetings with the inmate. Mr. Snyder explained that team meetings are conducted regularly and it is an opportunity for an inmate to discuss with his unit manager, case manager, and others, any issues with regard to his institutional adjustment, his work assignment and other matters such as his release preparation plan. In addition, community confinement and related issues are also discussed. At these meetings, the inmate has the opportunity to meet and communicate directly with staff. Notes of the meetings are placed in the inmate's file and are available for review when making a CCC eligibility and referral determination. Moreover, Mr. Snyder testified that even though the petitioner had never met with Mr. Caromano prior to his making the CCC referral, all the relevant information was in the petitioner's file and there is no reason why Mr.

---

[8] The program objectives also state that "all eligible inmates will have opportunities to participate in CCC programs to assist with their reintegration into the community, *in accordance with their release needs*." P.S. 7310.04, pg. 2. Therefore, to the extent that the petitioner argues that consideration of his release needs contradicts the purpose and scope of P.S. 7310.04, that is clearly not the case.

Caromano could not have made an appropriate assessment of the petitioner's case in his absence. Significantly, Mr. Snyder testified that the petitioner received the same consideration that any inmate would receive.

It is clear that although the program statement provides that an inmate have the opportunity to communicate with the staff making his CCC referral recommendation, the program statement does not require a face-to-face meeting with the inmate at the time the referral form is actually completed. Thus, there is nothing inappropriate in relying on the information provided by the inmate at his team meetings when making a CCC referral, as long as the inmate was given the appropriate opportunity to communicate with staff at that time. That was done in this case.

## V. Recommendation

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss as Moot (dckt. 9) be **GRANTED** and the petitioner's § 2241 petition be **DENIED** and **dismissed with prejudice**.

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); .

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to counsel of record via electronic means.

DATED: April 1, 2008.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE